Mr. Barber. Please the court. Good morning, your honors. My name is Alex Barber and I represent Columbia College Chicago. In its appeal from the decision of the NLRB, the college basically challenges two of the board's findings. First, it's finding that the college refused to bargain by failing to negotiate with the union over the effects of reductions in course credit hours that were implemented in the fall of 2011. And secondly, we challenge the board's imposition of an extraordinary remedy for the violations it found, namely imposition of the union's bargaining expenses. Mr. Barber, you do not challenge then the findings about bad faith bargaining, the retrogressive bargaining, the retaliation against the union president, and the harassment of the union president. Is that correct? That is correct. We challenge none of those findings. So with respect to the effects bargaining issue, I'd really like to focus on the issue concerning what the proper test should be or what analysis should be applied in deciding that issue. Because the board majority in its decision acknowledged that its analysis, the clear and unmistakable waiver test, was contrary to the authority in this circuit, namely the Chicago Tribune case that was decided almost 25 years ago. Despite the fact that the board majority acknowledged that its decision was contrary to the law of this circuit, they nonetheless disregarded the Chicago Tribune case and decided the case under the clear and unmistakable waiver standard. The significance of that is that it really does make a difference in the sense that under the test that was applied by the labor board, it's really necessary for an employer to prove that a specific issue is explicitly addressed and covered by a collective bargaining agreement before the employer is excused from bargaining over that issue. In this instance, it really would have required the collective bargaining agreement to state in explicit terms that the college not only had the right to make the decision to change the course credit hours for this particular semester, but that it also, the union did not have the right to engage in effects bargaining over that decision. Because everybody, all the parties agreed before the labor board that the college had no obligation to bargain over the decision. The only issue was whether or not it had a duty to notify and bargain with the union over the effects before implementing its decision. Now, because it applied the clear and unmistakable waiver test, the labor board found there was no waiver and therefore the college had a duty to bargain. But if the board had instead applied the contract coverage test, which not only this court has endorsed in Chicago Tribune, but is also the analysis that is used and applied by the District of Columbia Court of Appeals, the result would have been entirely different. Because under that test and that analysis, if a collective bargaining agreement, specifically most usually a management rights clause, addresses a particular subject matter, the effect of that is that the parties are deemed to have already negotiated over that issue and therefore the employer has no further obligation to bargain over the effects of that decision during the term of the agreement. Mr. Barber, can I ask you to step back a little bit? And for background purposes here, would you agree that a union ordinarily has a right to bargain about an employer's decision that affects hours, wages, and working conditions? That is correct, yes. Obviously, parties can agree to take certain issues off the table, as was done here. But that general background assumption is that the duty to bargain would also include the effects of the employer's decisions, right? That's correct, yes. I was wondering if you could address the Supreme Court's language in the Metropolitan Edison case, which the board has relied upon to argue in favor of the clear and unmistakable waiver rule, and I didn't see addressed in your briefs. Yes. In the Metropolitan Edison case, that case involved a contractual no-strike clause, and the issue was whether or not the employer had a right to impose more severe discipline on union officers for failing to enforce the contractual no-strike clause. And in that case, the board did apply the clear and unmistakable waiver test, and it was endorsed by the Supreme Court. The reason, though, that case is distinguishable is that the contract, the collective bargaining agreement in that case, did not address or cover this issue at all. It was silent with respect to the issue whether union officers had this higher duty. Therefore, we think that it really has no application, because I would actually agree that there may be circumstances, for example, when a contract is silent on a particular issue, that the clear and unmistakable test can come into play. But this isn't that case, because here, the collective bargaining agreement in the management rights clause, which was also in combination with a wrap-up or waiver clause, clearly, unquestionably covered the subject matter of the college's right to control academic decisions, including educational policies, as well as decisions and the implementation of decisions to change or modify the courses that were offered to students. Therefore, we think that the facts in this case are very, very different, for example, than what occurred in Metropolitan Edison, and we don't think that that case really applies in this specific situation. Let me address also the second issue, just briefly, the question about the remedy. There's no question but that the labor board does have broad discretion to impose remedies for violations of the act. However, the remedies imposed by the board cannot be punitive, or they will be considered as an abuse of the board's discretion. And we think that's what's happened here, because if you really take the effects bargaining violation out of the mix of violations found by the board, first of all, we don't think that this case really rises to the level of flagrant violations. You don't think that harassment at home of the union president and retaliation against her and the kind of bad faith and retrogressive bargaining don't deserve a fairly stiff response from the board? We don't think so. These are just business as usual in the collective bargaining world? Well, it's not business as usual, but for example, the administrative law judge who heard and decided this case, he denied that remedy. Sure, but it's the board that sets these policies, right? Well, the board sets the policies. The administrative law judge applies and enforces the policies. The judge found that the college had, even though he found violations, he found that the college had legitimate, debatable, good faith defenses to all of this conduct that was ultimately going to be unlawful. On the duty for effects bargaining, I understand that. I don't understand the good faith defenses to the attacks on the union president and the retrogressive and bad faith bargaining. Well, there were actually four categories of offenses that the board majority relied upon for this bargaining expense remedy. And there were requests for other extraordinary remedies as well in addition to bargaining expenses, but they were rejected both by the administrative law judge and by the board majority itself. The only extraordinary remedy that was imposed was bargaining expenses. Let me put it this way. Our court cannot resolve the circuit split over the difference between the clear and unmistakable waiver standard and the contract coverage standard here. If we were to follow circuit precedent here and set aside and agree with you on the effects bargaining issue, that obviously was part of the mix in the remedy decision. That's correct. But it would seem to me that there was, and tell me if I'm wrong, but there's a pretty good argument to say that the board ought to be able to just take a fresh look at the remaining package and decide what appropriate remedies, including some of those extraordinary remedies, might still be appropriate or whether the mix has changed enough so that they're not, but that that would need a fresh look from the board. In other words, a remand. Yes. We just don't think that it's necessary to remand if, for example, this court were to agree with the college on the effects bargaining issue. Then would we be saying, in effect, that it's an abusive discretion for the board to impose such a remedy on the basis of retaliation, harassment against union leaders, bad faith bargaining, retrogressive bargaining, et cetera? Based upon the facts in this case, that is correct, Your Honor. And the other aspect of it. That would be an extraordinary ruling on the board, wouldn't it? Well, the other aspect of it, the other aspect of it is that when the board majority imposed this remedy, it imposed the remedy for a period of time, actually some nine months, in which the college had not even violated the act. Because if you look at the majority's decision, they imposed this remedy beginning in March of 2011 and it runs until June of 2012 when the board found specifically that the college resumed bargaining in good faith. And there was no violation after that. But when the board majority chose this March 11, 2000 date, that has no support whatsoever in the record for imposing that kind of remedy during that period of time. In fact, even the board majority acknowledged that until the fall of 2011, some six, seven months later, the parties were still negotiating in good faith and making progress toward reaching an agreement. So when the board imposes this extraordinary remedy beginning in March 2011, frankly, that has no support whatsoever in the record. And we think that it falls then into the category of being a punitive remedy that is not entitled to enforcement by the court. That basically, Your Honor, concludes my opening arguments, unless you have any further questions. Not at this time. Okay. Thank you, Mr. Barber. Thank you. Ms. Isbell. May it please the court. Kelly Isbell here on behalf of the National Labor Relations Board. The overwhelming weight of this court's precedent agrees with the board's clear and unmistakable waiver standard. Those cases have never been overruled. The board clearly thought it was departing from Seventh Circuit precedent. Your brief takes an entirely different tack, which is astonishing. Well, what I looked at was the board's decision, and the board said that this court goes along with contract coverage, but then it cites its own decision in Provena. And in Provena, the board listed several cases, decisions from this court that have never been overruled and explains that although there was a Chicago Tribune decision, there are also other cases never overruled that apply clear and unmistakable waiver. And so I went back and read those cases, and they have never been overruled. And there have been cases since Chicago Tribune of Beverly, California, that apply the clear and unmistakable waiver test. Chicago Tribune did not adopt the contract coverage test. I think what happened in Chicago Tribune was you'll notice when you read that case that it actually starts out by noting that the board's standard is clear and unmistakable waiver and that with regard to on-the-job conduct, that was clearly and unmistakably waived by the union in the contract. With respect to off-the-job conduct, that's where the court and the board disagreed. And the court found it to be a simple matter of interpretation of the contract and completely disagreed with the board's interpretation. The court finding that off-the-job conduct was contained in, covered by the contract, the board disagreed, so the court overruled it. But the court starts out with clear and unmistakable waiver. It then goes on to say that it's a simple matter of interpretation and when a contract fully defines the party's rights, that's not clear and unmistakable waiver. Fully defines. This contract, in this case, says absolutely nothing about effects bargaining. Nothing about what was that? It says absolutely nothing about effects bargaining. There is no mention of effects bargaining in this contract at all. And the board has, for years, found that there is a separate statutory duty to bargain over effects. And you can't have a silent contract waive a statutory duty. Doesn't this contract, though, provide for effects for such changes on salary, benefits, and seniority? The contract specifies minimum compensation for wages. It does not specify maximum compensation and it does not say anything about making a decision and if that decision has an effect on wages, you cannot bargain over it. If you take a look at Beverly, California and the decision in that case, there was a management right to change the schedule. It was clear. The board and the court agree that the nursing home or hospital had the right to change the schedule. But that schedule impacted nurses' wages and you have to bargain over that reduction in wages. And that's very similar to what happened here. You have the right to make the changes in course credit hours. But if it has an effect on wages, as it did here, that's an effect you have to bargain over. But I thought the contract provides quite specifically what the consequence of a reduction in hours would be. The contract sets minimum wages, minimum compensation. That's it. It does not spell out what happens if we reduce wages. Well, I guess I'm intrigued by the calling it minimum. That's what the contract calls it. The contract specifically says this is minimum compensation. And I think what we're talking about here is the Fresno B argument that all the effects were compelled by the collective bargaining agreement. So first of all, I need to remind you that this was not raised to the board by Columbia College. So this is a jurisdictional issue under Section 10E of the Act. But the board went on to address this and say that the contract did not compel all of the effects. The contract specifically says minimum compensation. And even under Fresno B, you have to show, the college would have to show not only that all the effects were compelled, but there was no alternatives it could bargain about. And Columbia College made no showing about that. And there are things they could bargain about. There was only minimum compensation, so they could bargain about that. They could bargain about, I put some things in my briefs that they could talk about. They could grandfather people in so that they had the same credit hours for one semester so that people got used to the idea. There were a lot of things they could talk about. And remember that they did bargain about this in the past. They had reduced the credit hours in the photo department a couple of years before. And they had bargained about the effects of that and reached an agreement. So it is possible to reach an agreement on those and not violate the contract. Ms. Isbell, if it didn't speak to minimum compensation but just said compensation, would that be a different case? It might be, but I can see where the board may still well have said there were things you could bargain about. Even if you can't bargain about wages, you could have bargained about. There were discussions in the record about contact hours, the actual time you spend in the classroom, and sometimes that didn't go down, but the credit hours went down. So for those people, you might have made some sort of arrangement. There were things they could have discussed that might not have impacted on wages. So even if it said you cannot pay more than this, I think the board would say there were other things you could sit down and discuss. But all we're saying is that they need to sit down with the union and discuss it. That's the effect of the board's effect bargaining ruling. You need to talk about it. I think under contract coverage, you would ask a question about what happens if we disagree with you, and we'd go along with contract coverage. I'm not sure that there would be a different answer in this case. If you read ENLO, the D.C. Circuit's Decision on Effects Bargaining, what it says is that while it would be unusual for the court to find difference between decisional bargaining and effects bargaining, there could be bargaining history, the party's own conduct, to show that the effects were not covered by or contained in the contract. And in ENLO, the union did not request effects bargaining, and the union never identified any effects it wanted to discuss. All it asked for was decisional bargaining. That's not the case here. The union has consistently requested effects bargaining over these course hour reductions and has identified things it wants to discuss, and in fact, the parties in the past have discussed the effects of course credit hour reductions. So I don't think this is an ENLO case, even if you did apply contract coverage. But remember, my argument is that you do not have to because I think this court's, the weight of the precedent shows that you applied clear and unmistakable waiver. In your view, could we rule in your favor without overruling at least a portion of Chicago Tribune? I don't think you need to overrule Chicago Tribune at all. What should we say about it in your view? I think you can explain that the court found the board was completely wrong about its contract interpretation and that that contract did fully define the party's rights. This contract does not fully define the party's rights. There is no mention of effects bargaining. And the board has for years said that there is a separate statutory duty to bargain over effects, and the Supreme Court has said that statutory rights must be waived clearly and unmistakably. And silence in a contract can't be that clear and unmistakable waiver. Mrs. Bell, what do you make if you make anything of the Second Circuit approach? Well, the Second Circuit is interesting, and I'm not sure that it's actually that different. I mean, what they say is their first step is we'll look at the contract. And if the contract clearly and unmistakably covers the issue, and they use both language, but they also say that they are not adopting the contract coverage standard. So what they want to see is, like the language in the earlier D.C. Circuit decisions, if the contract fully defines the party's rights, then we go no further. But if the contract doesn't take care of everything, then we ask whether it was waived in some other way, and we look at bargaining history, and we look at parties' conduct. So you're saying if we were to, let's say, take the Second Circuit approach, it still would resound to your view? I think it would, Your Honor, yes. I mean, I consider the Second Circuit to be a clear and unmistakable waiver circuit. I mean, they make clear in the Rochester Gas decision that they are a clear and unmistakable waiver circuit, that they're not adopting contract coverage. And the board hasn't, since Rochester Gas hasn't addressed the Second Circuit's approach, but it does make a lot of sense. You look at the contract first, and if the language of the contract fully defines, but the board hasn't said anything about it.  It would have to be included in a contract such as the one we have here that would be so clear that we would not, we could confine it to the contract. You know, you list several things that could be bargained for. Would all of those have to be itemized as specifically waived in a reduction in credit situation or hours? If they never want to bargain over effects about anything, then they could try to get the union to agree to waive effects bargaining, and that's certainly not unlawful. Well, would they have to include the language that we're waiving effects, actually use that language? That's one way to do it. Is that what the board would seek us to say? Well, for the board to find that there was an effects bargaining waiver over every issue, yes, the board would want to see an effects bargaining waiver. But in terms of we don't want to bargain over wages, and remember the board didn't address this, so at this point I'm on my own, but the minimum compensation language could come out. There could be a clause that says, the zipper clause, for example, is not very specific. It could say we will not bargain over wages in any form during the term of this contract. If they didn't want to bargain about wages specifically, there are places in the contract they could add language. So there are ways it could be done. This issue doesn't come up very often. There are very few cases where there's an effects bargaining, decisional bargaining split, and it usually comes up when the board's interpreting a management rights clause. So I don't have a lot of examples to give you because it just does not happen very often. No, I appreciate that. I was just looking for what the board would be looking for in the future on cases such as reduction in hours as we have before us. If there are no more questions about that, would you like to talk about the remedy for a moment? Well, I think it would a lot depend on what we do with the merits. The board's remedy is based primarily on the bad faith bargaining, and the bad faith bargaining is mostly the bad faith regarding the successor contract bargaining. So there was, they reopened issues that were not in dispute. They submitted regressive bargaining proposals, and then their conduct outside the bargaining room, their conduct related to the union president and their refusal to provide information. So the effects bargaining was one small part of that, and I think the board's remedy could well stand even if you take the effects bargaining out. Remember, the board's remedy goes back to March of 2011 because they submitted regressive bargaining proposals, and that all has to do with the successor contract, not the effects bargaining contract. Could you explain the March 11 date? March 11, March 2011, they put forward a proposal. The parties bargained for six months, and then after the union files charges in a different case, they resubmit their March proposal and do away with all the language that had been tentatively agreed to. It wasn't a tentative agreement. They called it not in dispute, but all the agreements they had made in those six months were wiped away, and the board found this to be regressive and retaliatory. The board explained, I think it's on page six of the decision and order in a footnote, maybe footnote 21, why it went back to March 21. So it was not unexplained. It was never raised to the board. So again, this is a jurisdictional 10E issue. It should have been raised to the board if they had a problem with the board's changing the bargaining remedy dates. They never challenged the factual findings. The board did not overrule the ALJ's factual findings. The board relied on those factual findings and made different legal inferences from those findings. And I think once you take those factual findings as they stand and they are unchallenged, then the board didn't, it's abuse of discretion. The board did not abuse its discretion in fashioning this bargaining expenses remedy in this case. Are there no further questions? Thank you, Mr. Ismael. Mr. Barber? I would like to address several of the arguments that the board's counsel has made. First of all, we completely disagree with the board's interpretation of the Chicago Tribune case. What that case dealt with was a management rights clause that gave the employer the right to promulgate reasonable rules of conduct. The employer in that case unilaterally, during the term of the agreement, implemented policies dealing with both on- and off-the-job drug and alcohol use. The contract did not specifically address those issues. There was nothing whatsoever in the collective bargaining agreement dealing with those issues. But yet, because as far as the court was concerned, the court, not the board, that the contract, in a broad sense, covered and addressed whether or not the employer had the right to implement those policies. Therefore, under the contract coverage analysis, there was no violation, where clearly the board said, under the clear and unmistakable waiver test, there was a violation. With respect to other cases that the board relies on, first of all, they cite a bunch of other circuit decisions that supposedly endorse the clear and unmistakable waiver test. They really don't. It's not even addressed. They apply it, but there's no real issue whether that's the proper test. The way we read the cases, the only circuits that really address this are the D.C. Circuit, the Seventh Circuit, the First Circuit, and the Second Circuit. Those are the only four circuits. But you also have the one very recent case from the D.C. Circuit, very similar factually, the Heartland Plymouth court case, an effects bargaining issue, where the D.C. Circuit really smacked the board and actually imposed litigation costs against the board for making frivolous arguments in their appeal to the D.C. Court of Appeals. In this case, the board is taking, I think, a somewhat different tact, because in Heartland Plymouth court, they were relying upon the non-acquiescence doctrine, whereas here, they're attempting to claim, we think, incorrectly, that the board's decision in this case is consistent with the law in this circuit, and we think that is just flat wrong. Also, with respect to the board's argument that the college has waived its right to make certain arguments on appeal, we just think that's incorrect. First of all, with respect to the question as to whether or not the collective bargaining agreement does, in fact, cover and address what the effects are of these credit hour reductions on the part-time faculty represented by the union, it clearly does address those effects, and the college never waived that argument. In fact, in its brief to the board, it very specifically argued those points.  Could you address the board's point, well, the contract talks about effects, but only in terms of minimum compensation, so presumably there could be room, in the board's view, to negotiate for more or for other mitigation efforts. Theoretical, but yet the contract clearly spells out how the part-time faculty are paid, and it's based upon the credit hour. Depending upon how many credit hours they have previously taught, there is a different scale, but as far as how much a faculty member is paid for a particular course, it's clearly prorated. It's based upon three credit hours, but, for example, if a course is reduced from three to two hours, the agreement clearly spells out how much that faculty member is going to get paid. Is there room, maybe, because it says it's a minimum, that, theoretically, the parties could negotiate for something different? I suppose so, but I think that's very unrealistic, because the contract really does spell out what the effects are. One other point. Going back to the issue concerning the March 2011 date for the beginning of the bargaining expense remedy, the board majority never really explains or spells out in its decision why they selected that date. They said that was the date, but they never explained why. And when you read both the board's decision and the judge's decision, they found that the violations began actually late in the fall of 2011, not in March of that year. That was never alleged. It was never litigated. I see I've run out of time. Thank you very much, Your Honor. Thanks, Barbara. Thank you, Mrs. Smith. The case is taken under advisement.